IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROYAL GLADNEY,                          *
                                        *
        Plaintiff,                      *
                                        *
vs.                                     *
                                        * CIVIL ACTION NO. 15-000171-B
CAROLYN W. COLVIN,                      *
Commissioner of Social                  *
Security,                               *
                                        *
        Defendant.                      *

## ORDER

Plaintiff Royal Gladney (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and his claim for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* On June 8, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

## I.   <u>Procedural History</u>

Plaintiff filed his application for benefits on November 17, 2011. (Tr. 173, 179). Plaintiff alleged that he has been disabled since September 30, 2011, due to back pain, respiratory problems, carpal tunnel, and acid reflux. (<u>Id.</u> at 74, 223).

Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Angela L. Neel (hereinafter "ALJ") on June 11, 2013. (<u>Id.</u> at 70). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (<u>Id.</u> at 72-85). A vocational expert ("VE") also appeared at the hearing and provided testimony. (<u>Id.</u> at 85-89). On August 5, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 56). The Appeals Council denied Plaintiff's request for review on February 2, 2015. (<u>Id.</u> at 1-4). Therefore, the ALJ's decision dated August 5, 2013, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on June 8, 2016 (Docs. 16, 18), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> 1. **Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physicians Willie White, M.D. and Walid W. Freij, M.D., in favor of the opinion of a one-time consultative examiner, Huey Kidd, DO?**

## III. Factual Background

Plaintiff was born on May 30, 1964, and was forty-nine years of age at the time of his administrative hearing on June 11, 2013. (Tr. 74).  Plaintiff has an eleventh grade education, and testified that he was in special education classes throughout school. (Tr. 75-76). He last worked from January 2005 to September 30, 2011 at Gate Precast, a cement company, as a sandblaster.  (Id. at 86, 212). He has a variety of other past work, including working as a green chain off bearer at a lumber company, as a groundskeeper, and as general construction worker. (Id. at 86, 212).

Plaintiff reports that the pain in his back began in 2003, the pain in his back began in 2005, and his breathing problems began in 2011. (Id. at 245). Plaintiff testified that he has carpal tunnel syndrome in both hands. (Id. at 81, 82, 83). Plaintiff also testified that his breathing problems occur when he walks for long periods or smells any type of strong smells. (Id.). Plaintiff further testified that he has had trouble with his lower back for "probably about seven, eight years", and that

3

his back problems occur when he has been standing or sitting for long periods of time. (Id. at 83, 245).

Plaintiff reports that he lives at home with his family, and that his daily activities include sitting around and watching TV, spending time with his family, sitting on the porch, and walking around a little outside. (Id. at 79, 201, 205). Plaintiff reports that his condition affects every aspect of his personal care because it is hard to use his hands, and occasionally, he needs help getting dressed or has difficulty buttoning his clothes[1]. (Id. at 80-81, 85, 202, 256.) Plaintiff also testified that he drives, but he takes someone along with him if he is driving a long distance. (Id. at 204).

Plaintiff testified that Dr. Freij spoke with him about having surgery for his carpal tunnel; however, the surgery was expensive and Plaintiff did not have insurance. (Id. at 81). Plaintiff further testified that Dr. White has advised him that he might need back surgery; however, he does not have insurance. (Id. at 84).

## IV. **Analysis**

---

[1] Plaintiff also reported that his hand braces make it difficult for him to handle money, and that he has difficulty turning door knobs, writing with a pencil or typing on a keyboard. (Tr. 204-205).  Plaintiff further testified that he wears the brace on his right hand every day to help with the pain, and that he also wears it when he goes to bed. (Id. at 81). He wears a brace on his left hand only when needed. (Id.).

4

A.    <u>Standard of Review</u>

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

**B.**   <u>**Discussion**</u>

An individual who applies for Social Security disability benefits must prove his or her disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[3]   20 C.F.R.

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity.   The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.   If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.   If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.   <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.   <u>Id.</u>   Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.   <u>Sryock v. Heckler</u>, 764 F.2d 834, 836 (11th Cir.

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 30, 2011, the alleged onset date, and that he has the severe impairments of obesity; asthma; and moderate bilateral carpal tunnel syndrome, right worse than left[4]. (Tr. 58). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work with the following limitations: Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit, stand,

---

1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[4] The ALJ found that the Plaintiff has the following non-severe impairments: acid reflux; borderline right paratracheal indeterminate node; diastolic dysfunction, mild tricuspid regurgitation, mild pulmonary hypertension, mild pulmonary insufficiency, and trace mitral regurgitation; minimal right nephrolithiasis with 3 mm diameter calculus in lower right ureter; urolithiasis; elevated PSA and enlarged prostate; and remote history of ruptured bowel secondary to a stab wound. (Tr. 59). The ALJ further found that there was no objective evidence to support that the claimant has any type of mental disorder. (Id. at 58)

and walk 6 hours each; can push and pull as much as he can lift and carry; frequent exposure to right hand controls; frequent handling of right hand controls; no climbing ladders or scaffolds; and no balancing, stooping, kneeling, crouching and crawling. (Id. at 59). The ALJ further limited the Plaintiff to work with no exposure to humidity, wetness, and extreme cold or heat. (Id.) The ALJ also limited Plaintiff to simple, routine, and repetitive tasks with simple work-related decisions. (Id.). Utilizing the testimony of a VE, the undersigned concluded that considering Plaintiff's RFC, his age, education and work experience, he is unable to perform his past relevant work (Id. at 63). He further concluded that there are jobs existing in the national economy that Plaintiff is able to perform, such as "Inserting Machine Operator"; "Checker I/Greeter", and "Produce Weigher", all light and unskilled positions. (Id. at 64). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 64-65).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

### 1. **Issue**

**A. Whether the ALJ erred in rejecting the opinions of the treating physician, Willie White, M.D. and Walid W. Freij, M.D., a neurologist, in favor of the opinion of a one-time consultative examiner, Huey Kidd, D.O.?**

In this case, Plaintiff argues that the ALJ erred in rejecting the opinions of his treating physicians, Dr. Willie White, M.D, set forth in an "Ability to Work" questionnaire and a "Physical Functional Capacity" questionnaire (Tr. 438; 439-441) and that of Dr. Walid W. Freij, M.D., a neurologist, set forth in a "Physical Functional Capacity Assessment" (Tr. 444-447) in favor of the opinion of Huey Kidd, DO, a one-time consultative examiner. (Tr. 365-378). (Doc. 13 at 2-3). The Commissioner counters that the medical evidence does not support Dr. White or Dr. Freij's opinion that Plaintiff is unable to work, and their opinions are inconsistent with the physical findings and sparse treatment history included in the record. (Doc. 14 at 4-5). Having carefully reviewed the record in this case, the Court concludes that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians.  In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error.  See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so.  Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).  "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources."  Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or

unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

With respect to Plaintiff's back pain, the record reflects that during a September 2011 visit with Dr. White, Plaintiff reported that he had hurt his back and neck in a motor vehicle accident. (Tr. 437). He was prescribed Lortab. (Id.)

It does not appear that Plaintiff sought any treatment for his back in 2012. His next visit with Dr. White was on January 5, 2013, when Plaintiff presented to the J. Paul Jones emergency room complaining of lower back and leg pain. (Id. at 411). On that date, Dr. White noted on examination that Plaintiff had a decreased range of motion in his lumbosacral spine with a paraspinal muscle spasm, but no paresthesia. (Id.). Dr. White diagnosed Plaintiff with spasmodic lower back pain, and

prescribed Decadron, Depomedrol, Dydroxyzine, and Diazepam followed by Toradol and Flexeril. (Id.).

At some point, Dr. White completed a "Physical Functional Capacity Assessment". (Id. at 439-441). In the assessment, Dr. White opines that due to Plaintiff's back pain, he cannot carry anything, but he can lift 40 pounds or more, at a maximum frequency of 1/3 of an 8 hour day.[5] (Id.). Dr. White further indicates that Plaintiff can stand and/or walk for a total of 2 to 3 hours per day, but for no more than 30 to 40 minutes without interruption. (Id.). Dr. White also opined that Plaintiff can only sit for a total of 2 to 3 hours a day, but for no more than 1 hour at a time. (Id. at 440). Dr. White further opined that Plaintiff can never climb, balance, stoop, crouch, kneel, or crawl, and that Plaintiff's ability to reach, handle, push, and pull are affected by his impairments. (Id.). Dr. White opined that Plaintiff has environmental restrictions, including working around heights or vibrations, and that Plaintiff is unable to climb steps or ladders or "keep up" anything greater than 40 pounds. (Id. at 441).

Dr. White also completed an "Ability to Work" form wherein he opines that Plaintiff would be unable to work for eight hours

---

[5] The date on which Dr. White prepared this document is not clear. The top of the document bears fax dates of June 4, 2013, and June 11, 2013. (Tr. 439-441).

a day, five days a week due to his lower back pain and muscle spasms. (Id. at 438). He also opines that Plaintiff has been disabled since on or before September 30, 2011, and that his condition has lasted or is expected to last at least twelve months. (Id.)[6].

The record reflects that Plaintiff's treatment for carpal tunnel began on April 2, 2007, when Dr. White referred Plaintiff to Dr. Freij for persistent pain in his left hand and wrist. (Id. at 284). Plaintiff reported pain and soreness mostly in his left thumb region, but also in the left wrist, with associated tenderness and numb sensation. (Id.). He also reported numbness that kept him awake at night, and difficulty gripping with the left hand due to soreness. (Id.). Upon examination, Dr. Freij observed 5/5 motor power throughout, DTRs 2/5 all over, unremarkable finger to nose and heel to shins exam, unremarkable gait, and negative Tinel's sign bilaterally. (Id. at 285). Dr. Freij's assessment was carpal tunnel syndrome (suggested by the history of numbness and repeated awakening at night) and arthritis (affecting the first metacarpal phalangeal joint).

---

[6] The final treatment notes of Dr. White contained in the record are dated February 17, 2014. (Tr. 32). This is *after* the ALJ's decision. The notes reflect that Plaintiff was seen for "palpating" lower back pain that would not allow him to rest. (Id.). Dr. White noted that Plaintiff was still taking Lortab, but he did not bring the medication with him to the appointment. (Id.). No new treatment was discussed. (Id.).

(Id.).

A NCV/EMG test for the left upper extremity was performed on that date. (Id. at 286). Upon reviewing the results, Dr. Freij indicated that he was also sending Plaintiff for x-rays of his left hand and wrist, with a special concentration on his left thumb. (Id.). Dr. Freij indicated that he would see the Plaintiff after the workup for re-evaluation and treatment. (Id.). Upon reviewing the NCV/EMG test, Dr. Freij noted that the test revealed evidence of a mild bilateral Median neuropathy (median nerve entrapment at wrist) affecting sensory components without evidence of denervation, and mild left Ulnar neuropathy. (Id. at 289). Also, an X-Ray performed on that date showed no evidence of fracture or dislocation, and no evidence of acute or bony trauma to the left hand. (Id. at 290).

Plaintiff next saw Dr. Freij on January 21, 2008. (Tr. 283). Dr. Freij noted that Plaintiff reported that he still had pain in his hands, that Plaintiff was given Naproxen and wrist braces at the last visit, that those measures apparently were not helping, but Plaintiff had failed to show up for his follow-up. (Id.). Upon examination, Dr. Freij observed some swelling in Plaintiff's hands, and noted that Plaintiff's condition had progressed since the previous year. (Id.). Dr. Freij also noted that Plaintiff reported some pain when squeezing and making a fist, and that Plaintiff's strength was 5/5. (Id.). Dr. Freij's

assessment was bilateral carpel tunnel syndrome, with progression since last year. (Id.) The treatment plan was to repeat the NCV/EMG test, prescribe Lyrica, and consider surgery if the Lyrica did not work.(Id.).

Another NCS/EMG test was performed on February 18, 2008. (Tr. 291-294). The test results again revealed evidence of mild bilateral carpal tunnel syndrome (median nerve entrapment at the wrist) affecting sensory components without evidence of denervation. (Id.). There was also evidence of mild right sensory Ulnar neuropathy across the wrist and elbow without evidence of denervation, as well as evidence of mild left sensory Ulnar neuropathy across the wrist without evidence of denervation. (Id.). Dr. Friej noted that Plaintiff would be referred to Dr. Harris to consider surgery for the left median nerve release. (Id.).

Plaintiff's next saw Dr. Friej more than a year later on September 21, 2009. Dr. Freij noted that Lyrica and Lortab were helping Plaintiff 'quite a bit', but that his pain had become worse upon running out of Lyrica and Lortab. (Id. at 282). Dr. Friej also noted that Plaintiff's strength was 5/5, and that Plaintiff wanted to delay surgery until he had enough vacation time. (Id.). Plaintiff was prescribed Lyrica and Lortab as needed, and Dr. Friej noted that it would be necessary to repeat the nerve conduction exam if Plaintiff opted for surgery next

year because it would have been nearly two years since the last test was conducted. (Id.)

Plaintiff did not see Dr. Freij in 2010 or 2011. His next visit with Dr. Freij occurred on January 16, 2012. (Tr. 381). Plaintiff again complained of swelling, pain, and numbness in his hands. On examination, Dr. Freij noted that Plaintiff's strength was 5/5, and that there was swelling in his hands. (Id.) He diagnosed Plaintiff with carpal tunnel syndrome bilaterally, prescribed Lortab and gave Plaintiff wrist braces. (Id.). Plaintiff indicated that he was willing to pursue surgery, but was unable to do so because of a lack of insurance. (Id.).

Follow up appointments occurred on July 16, 2012 and January 14, 2013. (Tr. 380, 393). Dr. Freij noted that Lortab and the wrist braces had been helping Plaintiff, and that he should continue using them. (Id.). Upon examination, Plaintiff's strength was noted to be 5/5, and his hand grips were normal. (Id. at 380, 381, 393).

During Plaintiff's June 10, 2013 visit, Dr. Freij noted that Plaintiff reported that his hands had been doing relatively well until he was mowing his lawn in June 2013, and began experiencing numbness, tingling, and pain. (Tr. 35). Upon examination, Plaintiff was having some "give way" with his hands, but his hand strength was 5/5, and his gait was normal

16

(Id.). Dr. Freij diagnosed Plaintiff with "bilateral moderate carpal tunnel syndrome", and discussed switching Plaintiff from Lortab to Ultram for his pain. (Id.).

On the same day, Dr. Freij completed an "Ability to Work" form, and opined that Plaintiff is unable to work eight hours a day, five days a week due to his carpal tunnel syndrome and ulnar and radial neuropathy. (Tr. 443). He further opined that Plaintiff has been disabled since September 30, 2011, and that his condition had lasted or was expected to last at least 12 months. (Id.). Dr. Freij noted that his findings were based on Plaintiff having nerve damage affecting both hands, and causing pain, numbness, and tingling. (Id.).

Dr. Freij also completed a Physical Functional Capacity Assessment, wherein he opined that Plaintiff can carry/lift between 10 and 20 pounds. (Tr. 444). He further opined that Plaintiff could frequently climb, balance, stoop, crouch, or kneel, and could occasionally crawl. (Tr. 445). He further opined that Plaintiff's ability to reach, handle, feel, push, and pull would be affected by his carpal tunnel and ulnar radial neuropathy, and that Plaintiff should avoid temperature extremes and vibrations. (Tr. 447). Dr. Freij further observed that work that requires the use of Plaintiff's hands or repetitive motions at his wrists, and work that requires carrying and lifting would be impacted by Plaintiff's physical limitations. (Id.).

17

Plaintiff's last two visits with Dr. Freij were in December 2013 and June 2014[7]. (Tr. 15, 34). Dr. Freij noted that the nerve tests in 2008 revealed evidence of mild bilateral carpal tunnel syndrome affecting sensory and sensory components without evidence of denervation, mild right sensory ulnar neuropathy, left sensory ulnar neuropathy and bilateral sensory radial neuropathy mild. Dr. Freij thought it "most likely" that Plaintiff's "carpal tunnel was worse" since it had been five years since the nerve tests. On examination, Plaintiff's motor strength was 5/5 and no atrophy was noted in the APBs[8]. Dr. Freij noted that Vicoprofen 7.5 mg seemed to be helping although it was a little expensive for Plaintiff; thus, the medicine was changed to Vicoden 7.5 mg.(Id.)  Plaintiff was advised to avoid using his hands in a repetitive motion, to wear a wrist brace, and to take NSAID pm. (Id. at 15). Plaintiff again indicated that he did not want to consider surgery because he did not have insurance. (Id. at 34).

Upon review, the undersigned finds that the ALJ had good cause for rejecting Dr. White and Dr. Freij's opinions that

---

[7] These visits were after the ALJ rendered her decision in August 2013.

[8] The abductor pollicis brevis ("APB")is a muscle in the hand that functions as an abductor of the thumb. See https://nervesurgery.wustl.edu/ev/hand/median/thenarbranch/Pages /AbductorPollicisBrevis.aspx

Plaintiff cannot perform sustained work because of his back pain and carpal tunnel. Dr. White's opinion that Plaintiff is disabled is undermined by the spare treatment for back problems and his treatment records. Plaintiff's back problems date back to a motor vehicle accident in September 2006. While he requested in 2006 to be referred to a neurosurgeon for lower back pain and was scheduled for an MRI, there are no further records regarding any treatment for back pain until three years later, in September 2009. (Tr. 309, 310). In 2009, he was prescribed a variety of medicine, including Lortab, Decadron, Depo-Medrol, Flexeril, and Mobic. (Id.).

MRIs were performed in June 2010, January 2011, and June 2011. (Tr. 301, 315-316, 322-323). Dr. Joseph H. Hagood noted in June 2010 that Plaintiff's alignment was somewhat straightened, his vertebral body heights were maintained, and his disc spaces appeared normal, though there was some sclerosis about the sacroiliac joint that Dr. Hagood believed could indicate some early arthritic change. (Id. at 321-322). Aside from these findings, Dr. Hagood indicated that the lumbar spine appeared otherwise unremarkable. (Id.). Records dated the day after this MRI indicate that there was a small shallow broad-based protrusion of disc slightly eccentric to right of midline at L4-L5, and a tiny central protrusion of disc at L5-SI. (Id. at 301). Radiology records completed in January and June 2011

19

indicate that Plaintiff had normal lumbar spine, and there was essentially no change in the results since the June 2010 scan. (Tr. 323, 322). Dr. Hagood noted that if Plaintiff had any radicular pain, an MR should be obtained to evaluate the discs. (Id. at 322). As noted *supra*, Plaintiff reported back pain to Dr. White during a September 2011 visit, and was prescribed Lortab.  He did not seek any treatment for back pain in 2012, and only saw Dr. White once for back pain in 2013, and in 2014. Dr. White noted that Plaintiff had a decreased range of motion in his lumbosacral spine with a paraspinal muscle spasm, but no paresthesia.  He diagnosed Plaintiff with lower back pain and prescribed medication. (Tr. 32, 411, 437, 439-441). These sparse records, and repeated notations that the lumbar spine was 'normal' and 'unremarkable' are at odds with the opinions expressed in Dr. White's Physical Functional Capacity Assessment, and the Ability to Work form wherein he opined that Plaintiff is unable to work 8 hours 5 days a week[9].  Accordingly, the ALJ had good cause for rejecting these opinions of Dr. White.

_____

[9] Dr. White's opinions are also at odds with those of Dr. Freij, who upon examining Plaintiff, opined that Plaintiff can lift and carry up to twenty pounds, and that he has no limitations in standing or walking. (Tr. 444).  It was the ALJ's duty to resolve conflicts in the evidence, and she did so in this case. Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

The ALJ likewise had good cause for rejecting Dr. Freij's opinion that Plaintiff is disabled due to his carpal tunnel syndrome. While Plaintiff has been diagnosed with carpal tunnel syndrome and ulnar and radial neuropathy based on nerve studies, his treatment with Dr. Freij was infrequent and conservative. While Dr. Freij's treatment notes reflect that surgery was discussed with Plaintiff, but declined due to lack of insurance, the notes also reflect that earlier, while still gainfully employed, Plaintiff declined surgery while he built up his vacation. (Tr. 282).

Moreover, Dr. Freij's treatment notes reflect that during Plaintiff's July 2012 visit, Dr. Freij observed that Plaintiff's wrist braces and Lortab were helping his condition. And, in June 2013, Dr. Freij's treatment notes reflect that Plaintiff's hands were doing "relatively well" until he mowed his lawn, and this triggered numbness, tingling and pain in his hands. Dr. Freij's treatment notes reflect that his examinations of Plaintiff repeatedly showed full strength in Plaintiff's upper and lower extremities and that hand gripping was normal. (Tr. 34, 282, 380, 381, 393). The records also reflect that during Plaintiff's visit to Dr. Fahoum for shortness of breath [10] on

---

[10] Asthma is noted by the ALJ to be a severe impairment. (Tr. 58). The Plaintiff does not dispute any finding of the ALJ with regards to his asthma.

September 20, 2011, Dr. Fahoum  noted normal digits and no tenderness to indicate any arthritis. (Id. at 338). Dr. Fahoum's treatment records dated March 20, 2014 and May 15, 2014, also reflect that upon examination, Plaintiff had full strength in his upper and lower extremities and normal digits. (Id. at 17, 19). This evidence, including Dr. Freij's own treatment records, demonstrate that the ALJ had good cause for rejecting Dr. Freij's opinions that Plaintiff is unable to work.

Moreover, Dr. Huey Kidd, D.O., examined Plaintiff on February 14, 2012 at the request of the Agency and he found that Plaintiff had 5/5 grip strength bilaterally, a full range of motion in the upper extremities and 5/5 strength and full range of motion in the lower extremities. His findings are consistent with multiple treatment notes in the record made by both of Plaintiff's treating physicians and the other medical professionals. (Tr. 367, see id. at 17, 19, 338, 389). He further found that Plaintiff is able to heel walk, able to toe walk, is able to bend and touch his toes, and is able to stand without difficulty. (Id.). Tests performed showed a reduction in FVC that would suggest a restrictive process, though Dr. Kidd noted that the presence of restriction should be confirmed by measuring long volumes [11] . (Id. at 369). Dr. Kidd diagnosed

---

[11] Dr. Kidd notes that Plaintiff had difficulty performing the FVC properly and consistently. (Tr. 370).

Plaintiff with asthma and carpal tunnel syndrome. (Id. at 367).

Based on the foregoing, the Court finds that the ALJ had good cause to assign no weight to the opinions of Dr. White and Dr. Freij that Plaintiff was unable to work.

Further, there was substantial evidence to support the ALJ's finding that Plaintiff has the RFC to perform the positions identified by the ALJ. RFC is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

To determine Plaintiff's RFC, the ALJ utilized the testimony of a vocational expert at the hearing. (Tr. 85). The ALJ presented the VE with a hypothetical situation in which an

23

individual is limited to work with a light exertion level and the following limitations: frequent use of his right hand for hand controls and handling, no climbing ladders or scaffolds, no balancing, kneeling, or crawling, and no work around unprotected heights, moving mechanical parts, and the humidity and wetness and extreme temperatures or the heat, and no respiratory irritants. (Id. at 86-87).  The hypothetical individual was further limited to simple, routine, repetitive tasks and making simple work related decisions. (Id.). The VE testified that such an individual could not perform any of the Plaintiff's past work, but could perform other work including inserting machine operator (unskilled light work at 2 SVP), checker I or 'greeter' at a retail store (unskilled light work at 2 SVP), and produce weigher (unskilled light work at 1 SVP). (Id. at 87-88). The hypothetical posed to the VE was consistent with the medical evidence discussed above, and the ALJ's decision was directly based upon the testimony that followed.

Based on the evidence set forth in detail herein, the Court finds that the substantial evidence in this case support's the ALJ's finding that Plaintiff can perform a range of light work, with the stated restrictions. Accordingly, Plaintiff's claim must fail.

## V.   Conclusion

For the reasons set forth herein, and upon careful

consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

    **DONE** this **27th** day of **September, 2016.**

                        **/s/ SONJA F. BIVINS**
                  **UNITED STATES MAGISTRATE JUDGE**